UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **LARYSA KOSTAK** | **CIVIL ACTION NO. 3:25-1093** |
| **VERSUS** | **JUDGE EDWARDS** |
| **DONALD J. TRUMP, ET AL.** | **MAG. JUDGE MCCLUSKY** |

## MEMORANDUM RULING AND ORDER

Before the Court are a Motion for Temporary Restraining Order and Preliminary Injunction ("TRO")[1] and a Motion for Release[2] filed by Petitioner Larysa Kostak. Respondents (sometimes "Government")[3] oppose the motions.[4] For the reasons that follow, the Motion for TRO is **GRANTED** and the Motion for Release is **DENIED**.

### I.    BACKGROUND

Petitioner is a native and citizen of Ukraine who entered the United States in 2005 without being inspected by an immigration officer.[5] On January 18, 2018, she applied for asylum through the United States Citizenship and Immigration Services.[6] On May 15, 2019, she was served with a Notice to Appear charging her with removability as an alien present in the United States without being admitted or paroled or who arrived in the United States at any time or place other than as

---

[1] R. Doc. 3.
[2] R. Doc. 9.
[3] Respondents are Donald J. Trump, Kristi Noem, Pamela Bondi, Todd Lyons, Brian S. Acuna, Keith Deville, and the Executive Office of Immigration Review.
[4] R. Docs. 15 and 18.
[5] R. Doc. 1 at ¶35-36. R. Doc. 15-2, p.1.
[6] R. Doc. 15, p.3.

designated by the Attorney General.[7] The Notice to Appear informed Petitioner that the Department of Homeland Security charged her under §212(a)(6)(A)(i) of the Immigration and Nationality Act and ordered her to appear in immigration court to show why she should not be removed.[8]

Petitioner appeared before an Immigration Judge on September 12, 2019, where the purpose of the hearing was to address the charges against her and establish her removability.[9] Petitioner was not detained. A hearing was set for November 1, 2022, on the merits of her 2018 asylum application.[10] The present record before the Court does not reflect whether this hearing occurred. The record reflects that on March 6, 2023, the immigration court notified Petitioner that her case was taken off the court's active docket through a Notice of Intent to Take Case Off the Court's Calendar.[11] Approximately two years later – on March 18, 2025 – the immigration court issued a Notice of In-Person Hearing to Petitioner; she was due to appear on June 26, 2025.[12]

On June 26, 2025, Petitioner appeared before the immigration court for a master calendar hearing.[13] As Petitioner was leaving her hearing, she was taken into custody by Immigration and Customs Enforcement ("ICE").[14] On July 4, 2025, she

---

[7] R. Doc. 15-2.
[8] See R. Doc. 15-3.
[9] R. Doc. 15, p.3.
[10] R. Doc. 15, p.3; R. Doc. 15-1, p.1.
[11] R. Doc. 15, p.4.
[12] R. Doc. 15, p.4.
[13] R. Doc. 15, p.4; R. Doc. 1, p. 11. A master calendar hearing is designed to advise immigrants of "their rights, explain charges and factual allegations contained within their Notices to Appear, and to set the stage for later hearings on the merits." R. Doc. 1, p. 2, fn.1.
[14] R. Doc. 1, p.11; R. Doc. 15, p.4.

was transferred to the Richwood Detention Center in Monroe, Louisiana, where she is currently detained.[15]

On July 8, 2025, Petitioner requested a bond and custody redetermination and the matter was set for hearing on July 22, 2025.[16] Respondents assert that "[a]t the custody redetermination hearing on July 22, 2025, the Immigration Judge determined that Petitioner was subject to mandatory detention and denied her request for a change in custody status."[17] According to Petitioner, her request for bond was "summarily denied."[18] Further, Petitioner asserts she was denied a "full, fair and individualized bond hearing."[19] Petitioner reserved her right to appeal the decision to the Board of Immigration Appeals ("BIA").[20]

On July 30, 2025, Petitioner filed the habeas petition currently pending before the Court asserting that Respondents' actions violated her Fourth Amendment protection against unreasonable seizure and her Fifth Amendment rights to procedural and substantive due process.[21] On the same day, Petitioner filed the instant motion for TRO and preliminary injunction seeking her immediate release.[22] Petitioner's motion for release asks this Court to order her release from ICE custody, pending adjudication of her motion for TRO and habeas petition.[23]

---

[15] R. Doc. 1, p.11; R. Doc. 15, p.4.
[16] R. Doc. 9-1, p.8; R. Doc. 15-1, ¶ 11.
[17] R. Doc. 15-1, p.2.
[18] R. Doc. 1, p.3.
[19] R. Doc. 3-1, p.9.
[20] R. Doc. 15-1, p.2.
[21] R. Doc. 1.
[22] R. Docs. 3 and 9.
[23] R. Doc. 9.

The Government filed a two-part opposition: (1) an expedited opposition to Petitioner's release pending adjudication of her TRO and (2) a subsequent opposition to her TRO.[24] Petitioner replied to the Government's opposition to her release.[25]

## II. LAW AND ANALYSIS

As a threshold matter, Petitioner is not challenging: an order for removal, the process by which her removability will be determined, or the exercise of discretion by the Government to detain her. Petitioner has brought this habeas action to challenge the constitutionality of the statutory framework by which Respondents contend her detention without bond is mandatory. This challenge is properly within this Court's habeas jurisdiction.[26]

### A. Motion for Temporary Restraining Order and Preliminary Injunctive Relief.

To obtain injunctive relief, Petitioner must establish: (1) a substantial likelihood her cause will succeed on the merits, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) the threatened injury outweighs the threatened harm the injunction may do to the opposing party, and (4) granting the injunction will not disserve the public interest.[27]

---

[24] R. Doc. 15; R. Doc. 18.
[25] R. Doc. 16.
[26] See *Jennings v. Rodriguez*, 583 U.S. 281, 291-296 (2018) (analyzing habeas jurisdiction to challenge detention without an individualized bond hearing).
[27] See *Misquitta v. Warden Pine Prairie ICE Processing Center*, 353 F.Supp.3d 518, 521 (W.D.La. Nov. 16, 2018) (citing *Piedmont Heights Civic Club, Inc. v. Moreland*, 637 F.2d 430 (5th Cir. 1981)).

*1. Likelihood of Success on the Merits.*

Petitioner has filed the instant Motion for Temporary Restraining Order and Preliminary Injunction seeking her immediate release averring she was unlawfully and unconstitutionally deemed ineligible for a bond based on an erroneous finding that she is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) ("Section 1225").[28] Petitioner asserts that this incorrect determination is unlawful as it violates the plain text of the statute, unconstitutional as she was given no opportunity to challenge the determination, and an abuse of discretion as she is not subject to expedited removal.[29] Petitioner contends that she is entitled to a bond hearing under 8 U.S.C. § 1226(a) ("Section 1226") and that the Government is required to establish by clear and convincing evidence that she should be detained while her removal proceeding is pending.[30] In contrast, Respondents contend that the plain text of Section 1225 shows that it governs Petitioner's detention, legislative history supports the application of Section 1225 to Petitioner's detention, and Petitioner failed to exhaust her administrative remedies.[31]

The Supreme Court recently analyzed the interplay between Section 1225 and 1226 in *Jennings v. Rodriguez* and that analysis is instructive here. Section 1225 provides that "an alien who arrives in the United States or is present in this country

---

[28] R. Doc. 3-1, p. 6.
[29] R. Doc. 3-1, p. 11-12. To the extent there is an issue of whether Respondents' position in this case is based on a recent change in agency policy (R. Doc. 3-1, p. 13), the Court does not find that the agency's alleged change in the interpretation of the subject statutes controls the Court's authority here. See *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 395 (2024).
[30] R. Doc. 9-1, p.8.
[31] R. Doc. 18, p.19-20.

but has not been admitted, is treated as an applicant for admission."[32] In *Jennings,* the Court observed that the decision of who may enter this country and who may remain "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."[33] The Court notes that Section 1225(b), the provision at issue in the instant habeas petition, "applies primarily to aliens seeking entry into the United States."[34]

Then, the Court notes, Section 1226 "applies to aliens already present in the United States."[35] "Section 1226(a) creates a default rule for those aliens by permitting – but not requiring – the Attorney General to issue warrants for their arrest and detention pending removal proceedings. Section 1226(a) also permits the Attorney General to release those aliens on bond, 'except as provided in subsection (c) of this section.'"[36] "Federal regulations provide that aliens detained under §1226(a) receive bond hearings at the outset of detention."[37]

The *Jennings* analysis explains the necessity for both statutes by differentiating between the detention of arriving aliens who are seeking entry into the United States under Section 1225 and the detention of those who are already present in the United States under Section 1226. The record before this Court indicates that Petitioner was already present in the United States when the

---

[32] *Jennings*, 583 U.S. at 287 (citing 8 U.S.C. § 1225(a)(1) (internal quotations omitted)).
[33] *Jennings*, 583 U.S. at 287.
[34] *Jennings,* 583 U.S. 297.
[35] *Jennings*, 583 U.S. at 303.
[36] *Jennings*, 583 U.S. at 303. Subsection (c) of Section 1226 pertains to aliens who fall into categories involving criminal offenses or terrorist activities.
[37] *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

Government served her with a Notice to Appear for immigration proceedings in 2019. She was not detained when she appeared for her initial immigration hearing. Respondents' position that Section 1225 applies "because Petitioner is present in the United States without being admitted"[38] is contrary to the Supreme Court's analysis of the application of 1225 to arriving aliens. Further, Respondents' interpretation of Section 1225 would render Section 1226 unnecessary.

Respondents also assert that Petitioner has failed to exhaust her administrative remedies before the BIA.[39] Respondents do not cite a statutory requirement for exhaustion in support of this argument. Instead, Respondents assert that the failure to exhaust would deprive the Court of agency expertise in its statutory analysis, encourage other detainees to bypass the BIA, and Petitioner has not demonstrated that exhaustion would be futile.[40] The Court does not find Respondents' arguments persuasive because this Court is the proper forum in which Petitioner can bring her constitutional claims.

The Court finds the Petitioner will likely succeed on the merits that the determination that her detention is mandatory under Section 1225 was erroneous and that she is entitled to a bond hearing under Section 1226(a). Petitioner is likewise likely to succeed on the merits of her claim that her continued detention, without the required bond hearing, violates her rights guaranteed by the Fifth Amendment.

---

[38] R. Doc. 18, p.20
[39] R. Doc. 18, p.23.
[40] R. Doc. 18, pp.23-26.

*2. Irreparable Harm.*

Petitioner must also establish a substantial threat of irreparable injury to justify injunctive relief. She points to Fifth Circuit precedent which defines irreparable injury as "harm for which there is no adequate remedy at law."[41] Petitioner asserts that the unconstitutional deprivation of liberty, even on a temporary basis, constitutes irreparable harm.[42] The Court agrees.[43]

*3. Balance of the Equities and Public Interest.*

Petitioner must show that the threatened injury, the deprivation of her rights protected by the Constitution, outweighs the injury to Respondents if the injunction is granted. The Court finds that the granting of this injunction will require Respondents to grant Petitioner a bond hearing under Section 1226(a). The Petitioner's threatened injury, her continued detention without a bond hearing in violation of her Fifth Amendment rights, far outweighs the burden to Respondents of conducting a bond hearing.[44] The Court also finds that granting Petitioner injunctive relief serves the public interest, as it will require the Government to ensure compliance with its own laws.[45]

---

[41] R. Doc. 3-1, p. 17 (citing *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.* 710 F.3d 579, 585 (5th Cir. 2013)).
[42] R. Doc. 3-1, p. 17.
[43] See *Opulent Life Church v. City of Holly Springs,* 697 F.3d 279, 295 (5th Cir. 2012) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.")).
[44] The Court also notes that Petitioner has already submitted evidence to be considered by the immigration judge. See R. Doc. 3-2.
[45] R. Doc. 3-1, p.18 (citing *Doe v. Noem,* 2025 WL 1141279, at *9 (W.D. Wash. Apr. 17, 2025) ("The public has a vested interest in a federal government that follows its own regulations.").

*4. Scope of the Injunction*

Rule 65 of the Federal Rules of Civil Procedure requires that an injunction state its terms specifically.[46] Petitioner requests that the Court grant the injunction and order her immediate release. The Court finds that the appropriate relief is for Respondents to provide Petitioner with an individualized bond hearing before an immigration judge pursuant to Section 1226(a) no later than Friday, September 5, 2025. If the hearing is not conducted, Petitioner shall be released until it has been determined that she should be detained by the Attorney General as set forth in Section 1226.

**B.     Motion for Release.**

In this motion, the Petitioner seeks her immediate release while her habeas petition and request for injunctive relief are pending. The Court will deny this request in light of the injunctive relief granted to the Petitioner. If the individualized bond hearing is not held, Respondents are ordered to release Petitioner. The parties are to update the Court on the status of Petitioner's bond determination by September 8, 2025.

**C.     Security**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined

---

[46] Fed. R. Civ. P. 65(d)(1).

or restrained."[47] Further, it is within the Court's discretion "to require no security at all."[48] Accordingly, the Court will not require Petitioner to post security.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 3) is **GRANTED** and Respondents are to provide Petitioner with an individualized bond hearing before an immigration judge pursuant to Section 1226(a) no later than **Friday, September 5, 2025.**

**IT IS FURTHER ORDERED** that if the individualized bond hearing is not conducted by Friday, September 5, 2025, Petitioner shall be released until it has been determined that she should be detained by the Attorney General as set forth in Section 1226.

**IT IS FURTHER ORDERED** that the parties are to update the Court on the status of Petitioner's bond hearing by **September 8, 2025.**

**IT IS FURTHER ORDERED** that the Motion for Release (Doc. 9) is **DENIED.**

**THUS DONE AND SIGNED** in Chambers this 27th day of August, 2025.

_____
JERRY EDWARDS, JR.
UNITED STATES DISTRICT JUDGE

---

[47] Fed. R. Civ. P. 65(c).
[48] *Corrigan Dispatch Company v. Casa Guzman, S.A.* 569 F.2d 300, 303 (5th Cir. 1978).